D. Jean Veta (Admitted *Pro Hac Vice*)
jveta@cov.com
Benjamin J. Razi (Admitted *Pro Hac Vice*)
brazi@cov.com
Dennis B. Auerbach (Admitted *Pro Hac Vice*)
dauerbach@cov.com
Nishchay H. Maskay (Admitted *Pro Hac Vice*)
nmaskay@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 662-6000
Fax: (202) 662-6291

David B. Bayless (SBN 189235)
dbayless@cov.com
Tammy Albarrán (SBN 215605)
talbarran@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel.: (415) 591-6000
Fax: (415) 591-6091

Attorneys for Defendant
MICHAEL W. PERRY

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

      v.

MICHAEL W. PERRY and A.
SCOTT KEYS,

      Defendants.

Case No. CV-11-1309 R

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MICHAEL W. PERRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Date: May 21, 2012
Time: 10:00 a.m.
Courtroom: No. 8
Judge: Honorable Manuel L. Real

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

I.    ARGUMENT ............................................................................................ 3

    A.    Mr. Perry Is Entitled to Summary Judgment on the SEC's
Disgorgement Claim. ...................................................................... 3

    B.    The 10-K Disclosed Bancorp's Current Use of the DSPP. ................. 5

    C.    The 10-K Did Not Contain False or Misleading Statements
Concerning the Bank's Projected Capital Ratio. ................................. 6

    D.    Bancorp Had No Duty to Provide Continuous Disclosure of Its
Internal Forecasts. ........................................................................... 8

        1.    The Ninth Circuit Has Rejected Any Continuing Duty to
Update Internal Forecasts. ..................................................... 8

        2.    The SEC's Reliance on Cases from Outside the Ninth
Circuit Is Also Misplaced. .................................................... 10

    E.    Bancorp's Statement of Belief on February 29, 2008 That Its
Capital and Liquidity Would Be Adequate Is Not Actionable. .......... 12

    F.    Mr. Perry Did Not "Make" the Statements Contained in
Bancorp's DSPP Prospectuses. ......................................................... 14

    G.    Bancorp Had No Duty to Disclose the Suspension of
Dividends on Preferred Securities Prior to Board Approval. ............. 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Cleveland v. Policy Mgmt. Sys. Corp.*,
   526 U.S. 795, 119 S. Ct. 1597, 143 L.Ed.2d 966 (1999) ..................................... 4

*Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
   353 F.3d 1125 (9th Cir. 2004) ........................................................................ 14

*In re Burlington Coat Factory*,
   114 F.3d 1410 (3d Cir. 1997) ......................................................................... 11

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ........................................................................ 8, 9

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ......................................................................... 6

*In re Donald J. Trump Casino Sec. Litig.*,
   7 F.3d 357 (3d Cir. 1993) ............................................................................. 12

*In re Foxhollow Techs., Inc. Sec. Litig.*,
   359 F. App'x 802 (9th Cir. 2009) ...................................................................... 9

*In re International Business Machines Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998) .......................................................................... 11

*In re Time Warner Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) ............................................................................. 11

*In re Verifone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ...................................................................... 8, 9, 10

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ......................................................................... 12

*Janus Capital Group, Inc. v. First Derivative Traders*,
   131 S. Ct. 2296, 180 L.Ed.2d 166 (2011) ..................................................... 14, 15

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005) ...................................................................... 7

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)...................................................................................9

*SEC v. Conaway*,
    No. 2:05-CV-40263, 2009 U.S. Dist. LEXIS 26588 (E.D. Mich. Mar. 31,
    2009).........................................................................................................................5

*SEC v. First Pac. Bancorp*,
    142 F.3d 1186 (9th Cir. 1998).................................................................................4

*SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC*,
    289 F. App'x 183 (9th Cir. 2008).....................................................................4, 16

*SEC v. Jones*,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007)....................................................................5

*SEC v. Leslie*,
    No. C 07-3444, 2010 U.S. Dist. LEXIS 84906 (N.D. Cal. Aug. 18, 2010).........4

*SEC v. Manor Nursing Centers, Inc.*,
    458 F.2d 1082 (2d Cir. 1972)..........................................................................10, 11

*SEC v. Merchant Capital, LLC*,
    483 F.3d 747 (11th Cir. 2007)...............................................................................12

*SEC v. Miller*,
    No. 1:04cv1655, 2006 U.S. Dist. LEXIS 56413 (N.D. Ga. July 31, 2006).........5

*SEC v. Mozilo*,
    No. 09-3994-JFW, 2010 U.S. Dist. LEXIS 98203 (C.D. Cal. Sept. 16,
    2010).......................................................................................................................15

*SEC v. Platforms Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010).................................................................................4

*SEC v. Resnick*,
    604 F. Supp. 2d 773 (D. Md. 2009) ........................................................................4

*SEC v. Todd*,
    No. 03 CV 2230 BEN, 2007 U.S. Dist. LEXIS 38985 (S.D. Cal. May 30,
    2007).......................................................................................................................15

*SEC v. U.S. Sustainable Energy Corp.,*
  No. 5:08-cv-245, 2011 U.S. Dist. LEXIS 79909 (S.D. Miss. July 21,
  2011) ........................................................................................................ 12

*Shaw v. Digital Equipment Corp.,*
  82 F.3d 1194 (1st Cir. 1996) .................................................................. 10

*Shurkin v. Golden State Vinters, Inc.,*
  303 F. App'x 431 (9th Cir. 2008) ......................................................... 2, 9

*Sitrick v. Citigroup Global Markets, Inc.,*
  No. CV 05-3731 AHM, 2009 U.S. Dist. LEXIS 37754 (C.D. Cal. Apr.
  30, 2009) ............................................................................................ 12, 13

*Virginia Bancshares, Inc. v. Sandberg,*
  501 U.S. 1083, 111 S. Ct. 2749, 115 L.Ed.2d 929 (1991) ..................... 7

*Winick v. Pacific Gateway Exch., Inc.,*
  73 F. App'x 250 (9th Cir. 2003) ......................................................... 9, 11

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.,*
  655 F.3d 1039 (9th Cir. 2011) .............................................................. 11

**STATUTES, REGULATIONS, AND RULES**

15 U.S.C. § 77q(a) (Securities Act § 17(a)) ............................................ 16

17 C.F.R. § 240.10b-5 (SEC Rule 10b-5) ................................................. 6

Fed. R. Civ. P. 56 ................................................................................... 3, 4

# INTRODUCTION

The SEC seeks to muddy the waters on summary judgment by overwhelming the Court with 126 exhibits totaling almost 3,000 pages, and making irrelevant arguments concerning matters beyond the scope of Mr. Perry's motion. Notwithstanding the SEC's efforts to obfuscate, the issues before the Court are straightforward and ripe for summary resolution.

First, Mr. Perry is plainly entitled to summary judgment on the SEC's disgorgement claim. The SEC does not and cannot contest that Mr. Perry *acquired* substantial additional Bancorp shares during the period when he allegedly knew the company's situation was worse than it publicly disclosed. He did not sell a single share of his Bancorp stock during that period and, indeed, lost most of his net worth as a result of Bancorp's demise. After more than three years of investigating this case, with only a week remaining to take discovery, and less than two months before trial, the SEC has failed to adduce any evidence to support its prayer for disgorgement. As a result, the parties and the Court should not be obliged to expend any more resources addressing this baseless claim.

The SEC's claims regarding Bancorp's alleged failure to disclose its use of the Direct Stock Purchase Plan ("DSPP") in 2008 may also be summarily resolved. The plain language of Bancorp's Form 10-K dated February 29, 2008 belies the SEC's position. The 10-K describes the DSPP in the present tense and makes clear that the Plan was in current use. This disclosure undermines a central tenet of the SEC's case — that Bancorp concealed its use of the DSPP in 2008 — and mandates the entry of summary judgment on many of the SEC's claims.

The undisputed facts also undermine another of the SEC's central tenets: that Mr. Perry allegedly knew in February 2008 that the Bank's capital ratio would fall below 10 percent at quarter end, but concealed that information in the February 29 10-K. It is undisputed that, on the date the 10-K was filed, Bancorp's "best forecast" was that the Bank's capital ratio at the end of the first quarter

would be at least 10.61 percent — 61 basis points above the minimum for a well-capitalized institution under federal regulations. The Court need look no further in determining that the SEC's claims based on alleged false capital ratio disclosures in the 10-K are unfounded.

Additional SEC claims fail as a matter of law. The SEC argues that Bancorp had a continuing duty to update investors about its internal capital ratio forecasts because of its ongoing stock sales through the DSPP. But Ninth Circuit law is clear that there is *no* such duty to update financial projections — especially where, as here, Bancorp expressly disclaimed any duty to update projections and other forward-looking statements. Indeed, the SEC's continuous-duty-to-update theory is flatly at odds with the fact that the securities laws "require only periodic not continuous disclosure." *Shurkin v. Golden State Vinters, Inc.*, 303 F. App'x 431, 433 (9th Cir. 2008).

Similarly, the SEC's claim based on Bancorp's statements of belief in the 10-K about the adequacy of its capital and liquidity positions is not actionable pursuant to the "bespeaks caution" doctrine recognized by the Ninth Circuit. These statements of belief were true when made based on Bancorp's then-current capital ratio forecast, and they were accompanied by cautionary language that specifically warned that the Bank could lose its well-capitalized status if economic conditions continued to worsen during the course of the worst financial crisis since the Great Depression. Indeed, Bancorp specifically disclosed in its February 12, 2008 8-K that, under one adverse scenario, the Bank's capital ratio could fall to 9.78 percent — 22 basis points below the well-capitalized minimum.

The remaining SEC claims at issue in Mr. Perry's motion should also be summarily dismissed. It is undisputed that Mr. Perry had no role in preparing or approving Bancorp's DSPP prospectuses. He thus cannot be liable for alleged false statements in those documents. Contrary to the SEC's assertion, Mr. Perry cannot have engaged in fraud based on his signing of a Registration Statement

more than a year *before* the allegedly fraudulent prospectuses were issued.  Mr. Perry likewise is entitled to summary judgment on the SEC's claim that he fraudulently delayed disclosure of a decision to suspend the payment of dividends on preferred securities issued by Bancorp and the Bank.  It is undisputed that the companies' Boards of Directors had authority over whether to suspend the payment of dividends, and that Bancorp disclosed those suspensions promptly after the Boards exercised their authority.

These are all straightforward summary judgment issues that may be resolved short of trial without reference to the SEC's mountain of extraneous evidence.  The Court need not consider the SEC's argument that Bancorp engaged in a "scheme" to artificially inflate the Bank's capital ratios because that claim, while baseless, is not part of Mr. Perry's motion for partial summary judgment. The Court likewise need not consider the SEC's irrelevant evidence on materiality because the SEC cannot meet its threshold burden of showing that Mr. Perry made actionable false or misleading statements in the filings at issue in the motion.  To rule in Mr. Perry's favor, the Court need only review the plain language of Bancorp's SEC disclosures and the handful of undisputed facts noted above.  That plain language and those few undisputed facts show that Mr. Perry is entitled to partial summary judgment under Fed. R. Civ. P. 56.

# I.      ARGUMENT

## A.      Mr. Perry Is Entitled to Summary Judgment on the SEC's Disgorgement Claim.

A week before the close of discovery and less than two months before trial, the SEC has offered no evidence to support its disgorgement claim.  It has failed to come forward with evidence that Mr. Perry was enriched in any way by the alleged events.  It has likewise failed to contest Mr. Perry's evidence that he significantly *increased* his Bancorp stock holdings during the period in question and lost most of his net worth as a result of Bancorp's demise.  (SUF ¶¶ 5–7, 10.)

1    The SEC argues that it can seek disgorgement from Mr. Perry of his salary
2    and benefits or of funds Bancorp raised through the DSPP.  But to obtain
3    disgorgement of salary and benefits, or of proceeds from a securities offering, the
4    SEC must show that the defendant maintained a fraudulent scheme concerning the
5    offering for the specific purpose of reaping excessive and unjustified
6    compensation.  *SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC*, 289
7    F. App'x 183, 190 (9th Cir. 2008) (citing *SEC v. First Pac. Bancorp*, 142 F.3d
8    1186, 1192 (9th Cir. 1998)).  Moreover, the SEC must show that such
9    compensation was "causally linked to [the] unlawful conduct," and that it would
10   not have been obtained by the defendant as compensation for "perform[ing]
11   various functions of value to the company other than" the alleged illegal activities.
12   *SEC v. Resnick*, 604 F. Supp. 2d 773, 783 (D. Md. 2009).  The SEC has made no
13   such showings here, and it cannot do so in light of the substantial benefits Mr.
14   Perry voluntarily *forfeited* in 2008.  (*See* SUF ¶¶ 11–12.)

15   While the SEC asserts that it has no burden "to present evidence on [the
16   [disgorgement] issue before a trial on the merits is held" (SEC Opp'n at 24), that
17   contention is flatly at odds with Fed. R. Civ. P. 56.  Pursuant to Rule 56,
18   "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to
19   make a showing sufficient to establish the existence of an element essential to [its]
20   case, and on which [it] will bear the burden of proof at trial."  *Cleveland v. Policy*
21   *Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S. Ct. 1597, 1603, 143 L.Ed.2d 966
22   (1999) (citation and quotation marks omitted).

23   The SEC has the burden of proving a "disgorgement figure [that]
24   reasonably approximates the amount of unjust enrichment."  *SEC v. Platforms*
25   *Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (citations and quotation
26   marks omitted).  It has not met that burden.  Courts have granted summary
27   judgment against the SEC where it has failed to satisfy its burden of establishing a
28   factual basis for its disgorgement claim.  *See, e.g.*, *SEC v. Leslie*, No. C 07-3444,

2010 U.S. Dist. LEXIS 84906, at *4–*6; (N.D. Cal. Aug. 18, 2010); *SEC v. Jones*, 476 F. Supp. 2d 374, 386 (S.D.N.Y. 2007); *SEC v. Miller*, No. 1:04cv1655, 2006 U.S. Dist. LEXIS 56413, at *38–*41 (N.D. Ga. July 31, 2006).[1]  The Court should likewise do so here.

### B.    The 10-K Disclosed Bancorp's Current Use of the DSPP.

As explained in our Opening Brief, Bancorp's February 29, 2008 10-K expressly states that Bancorp "has" a Direct Stock Purchase Plan that "offers" investors an opportunity to purchase shares over the internet, and that investors interested in purchasing more than $10,000 of stock "can" participate in the DSPP waiver program.  The SEC cannot plausibly dispute that these statements are in the present tense and thus disclose Bancorp's current use of the DSPP as of the 10-K filing date.

The SEC's contention that Defendants testified otherwise is baseless.  Mr. Keys testified that the 10-K "says what it says, that the plan is ongoing." Supplemental Declaration of Jason A. Levine in Support of Michael W. Perry's Motion for Partial Summary Judgment [hereinafter "Supplemental Levine Declaration"], Ex. A at 4:22–23.  Mr. Perry similarly testified that "[w]e had a 10-K that said that we had an *open and active program* . . . ."  Declaration of Nicholas S. Chung (Dkt. # 54), Ex. 113 at 2528.2:17–18 (emphasis added).  This testimony is in full accord with the 10-K's plain words.  It is, of course, those plain words that control, as the SEC itself acknowledges.  *See* SEC Opp'n at 11.

---

[1]  The SEC's reliance on *SEC v. Conaway* is misplaced.  *Conaway* denied defendant's motion for summary judgment because the SEC proffered evidence to support its disgorgement claim and the court found based on that evidence that there were disputed issues of material fact.  *SEC v. Conaway*, No. 2:05-CV-40263, 2009 U.S. Dist. LEXIS 26588, at *67 (E.D. Mich. Mar. 31, 2009).  The SEC has failed to do so here.

The SEC quotes Mr. Perry's testimony that in February Bancorp "didn't disclose . . . we had begun raising dilutive capital." SEC Opp'n at 9–10. But that statement merely reflects Mr. Perry's view that the limited amount of capital Bancorp was raising through the DSPP was not materially dilutive. Supplemental Levine Declaration, Ex. B at 8:19–10:12.[2] It has nothing to do with whether the 10-K disclosed Bancorp's current use of the DSPP, which it plainly did.

The SEC argues that the 10-K should have disclosed that Bancorp had ceased raising capital through the DSPP for a time, then resumed doing so in February 2008. But, as explained in our Opening Brief, "Rule 10b-5 [prohibits] only misleading and untrue statements, not statements that are incomplete . . . ." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (citation and quotation marks omitted); Perry Opening Br. at 12. The 10-K statement that the DSPP was in current use on February 29, 2008 was neither misleading nor untrue. Accordingly, Mr. Perry is entitled to summary judgment on the SEC's claim.

## C. The 10-K Did Not Contain False or Misleading Statements Concerning the Bank's Projected Capital Ratio.

The SEC's claim that the 10-K misled investors concerning the Bank's projected capital ratio is likewise off base. The SEC continues to rely on an internal Bancorp forecast dated February 19 reflecting that, absent improvement measures, the Bank's capital ratio might be right at or slightly below the 10 percent minimum for a well-capitalized institution at the end of the quarter. SEC

---

[2] In contrast to the limited amounts of capital raised through the DSPP at the time ($11.2 million through February 29), the 10-K transparently disclosed that Bancorp might need to raise a large amount of "very dilutive" capital if economic conditions continued to worsen. Declaration of Jason A. Levine in Support of Michael W. Perry's Motion for Partial Summary Judgment (Dkt # 46) [hereinafter "Levine Declaration"], Ex. M at 304 (10-K). As explained in our Opening Brief, Bancorp was at the time considering the possible need for a major transaction to raise $500 million of capital on very dilutive terms. Perry Opening Br. at 11 (citing SUF ¶¶ 26–27).

1   Opp'n at 11.  As explained in our Opening Brief, however, the law in the Ninth

2   Circuit is that there is no duty to disclose internal forecasts.  *See* Perry Opening

3   Br. at 12.  The SEC cites no contrary authority.

4        Moreover, the February 19 forecast was based on an anomalous one-day

5   spike in interest rates and was superseded by the time the 10-K was filed on

6   February 29.  (SUF ¶ 29.)  It is undisputed that Bancorp's "best forecast" on that

7   date was that the Bank's capital ratio at quarter end would be 10.61 percent —

8   without any contribution of capital raised through the DSPP in 2008.  (*Id.*)

9        Contrary to the SEC's claim, it is irrelevant whether the February 29 10.61

10   percent forecast was generated slightly before or slightly after Bancorp filed its

11   10-K subsequent to the market's close on February 29.  The SEC must establish

12   that the 10-K contained an "objectively false" statement concerning the capital

13   ratio forecast.  *See, e.g.*, *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683

14   (9th Cir. 2005) (quoting *Virginia Bancshares, Inc. v. Sandberg*, 501 U.S. 1083,

15   1095–96, 111 S. Ct. 2749, 2759–60, 115 L.Ed.2d 929 (1991)).  It cannot satisfy

16   that burden in light of Bancorp's February 29 projection that the Bank's capital

17   ratio at quarter end would comfortably exceed the well-capitalized minimum.

18   Regardless, even *before* February 29, Bancorp was projecting that its capital ratio

19   on March 31 would exceed 10 percent because the anomalous interest rate spike

20   on February 19 had already eased by February 21.  Supplemental Levine

21   Declaration, Ex. C (February 21 email reflecting that Bank's ratio at March 31

22   was projected to be 10.15 percent).  Moreover, while not critical, it turned out that

23   Bancorp's forecasts were correct:  the Bank's capital ratio at March 31 *did* wind

24   up exceeding 10 percent, as measured through criteria approved by the OTS, and

25   the Bank remained well capitalized until late June.  Supplemental Levine

26   Declaration, Ex. D (July 1, 2008 letter from OTS that "reclassifie[d]" the Bank

27   from a well-capitalized to an adequately-capitalized institution).

28

That Bancorp continued to raise capital through the DSPP after February 29 is likewise irrelevant.  As Bancorp disclosed in its February 12, 2008 8-K, "safety and soundness remains our highest priority during these challenging times." Declaration of Jason A. Levine in Support of Michael W. Perry's Motion for Partial Summary Judgment (Dkt # 46) [hereinafter "Levine Declaration"], Ex. A at 79 (8-K).  It is thus not surprising that Bancorp prudently continued to raise capital through the DSPP after February 29, notwithstanding its "best forecast" that the Bank would remain well capitalized.  As explained above, Bancorp's use of the DSPP was duly disclosed in the 10-K, and a reasonable investor accordingly cannot have been misled by the company's efforts.

### D. Bancorp Had No Duty to Provide Continuous Disclosure of Its Internal Forecasts.

#### 1. The Ninth Circuit Has Rejected Any Continuing Duty to Update Internal Forecasts.

The SEC's other major contention in its summary judgment opposition is that Bancorp was required to provide continuous updates about its purportedly "deteriorating" capital ratios because of its ongoing DSPP sales.  As explained above and in our Opening Brief, however, there is no duty to disclose internal forecasts in the Ninth Circuit.  It is all the more clear that Bancorp had no duty to provide *continuous* updates of its capital ratio projections.

The Ninth Circuit's decisions in *Convergent* and *Verifone* are on point. They hold that a company has no duty to update internal projections, notwith-standing an ongoing securities offering.  *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 516 (9th Cir. 1991) (rejecting plaintiff's contention that, because of ongoing stock offering "the defendants were obliged to release information as it became known to them"); *In re Verifone Sec. Litig.*, 11 F.3d 865, 867 (9th Cir. 1993) (dismissing claim that stock offering prospectus and registration statement "failed to disclose projected or potential changes in Verifone's product market"

because allegations amounted to "no more than a failure to disclose forecasts, and as such, are not actionable").

The SEC's effort to distinguish *Convergent* and *Verifone* lacks merit. The SEC recognizes, as it must, that those cases "involve questions about the disclosure of internal projections." SEC Opp'n at 16. Critically, this case does as well. Bancorp's capital ratio forecasts are internal projections, *i.e.*, projections about what the Bank's capital ratio might be at a future date. *Convergent* and *Verifone* make clear that Bancorp had no duty to update such internal forecasts. *Accord Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 693 (9th Cir. 2011) (for plaintiff to prevail on securities fraud claim, "statement or omission must have been misleading at the time it was made; *liability cannot be imposed on the basis of subsequent events*") (citation and quotation marks omitted; emphasis added); *In re Foxhollow Techs., Inc. Sec. Litig.*, 359 F. App'x 802, 804 (9th Cir. 2009) (explaining that Ninth Circuit has never recognized *any* duty to update); *Shurkin*, 303 F. App'x at 433 (securities laws "require only periodic not continuous disclosure").

Bancorp had no duty to update its internal projections for the further reason that it expressly disclaimed any such duty. *See* Perry Opening Br. at 18. In the Ninth Circuit, there is no duty to update projections where a company "disclaim[s] any obligation to update its forecasts." *Winick v. Pacific Gateway Exch., Inc.*, 73 F. App'x 250, 254 (9th Cir. 2003), *withdrawn on other grounds*, 80 F. App'x 1 (9th Cir. 2003). In that circumstance, a filer's "predictions regarding its ability to meet its future obligations could not have remained 'alive' in the minds of reasonable investors." *Id.* Tellingly, the SEC entirely ignores *Winick* in its opposition, in the apparent hope that the Court will do so as well.

## 2.     The SEC's Reliance on Cases from Outside the Ninth Circuit Is Also Misplaced.

Because the law of the Ninth Circuit is clear, the Court need not consider the authorities outside the Ninth Circuit that the SEC cites.  It is noteworthy, however, that the main case on which the SEC relies, *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), is also at odds with its claim.  The court there held that a duty to update may sometimes exist in connection with an ongoing securities offering, but emphasized that such a claim "is [only] sustainable to the extent it relates to the nondisclosure of 'hard' material information, *as opposed to 'soft' information in the nature of projections*."  *Id.* at 1211 n.21 (citing *Verifone*; emphasis added).  It is, of course, "soft information in the nature of projections" — internal projections of what the Bank's capital ratio might be in the future — that the SEC erroneously claims should have been updated here.

Indeed, the *Shaw* court explained that even *hard* information need be updated only when newly-acquired hard information marks "an extreme departure from the range of results which could be anticipated based on currently available information."  *Id*. at 1210.  The SEC does not allege that Bancorp possessed and concealed any such "extreme departure" information here.  While it does contend that Bancorp should have disclosed its use of the DSPP to raise capital, the SEC's assertion that Bancorp concealed its use of the DSPP in 2008 is belied by the plain language of the February 29 10-K.  *See* section I.B, *supra*.  In any event, Bancorp disclosed that it had frequently used the DSPP in the past (*see* SUF ¶¶ 23–24), and its use of the DSPP in 2008 thus did not mark an "extreme departure" from what could reasonably be anticipated.  *Cf.* Supplemental Levine Declaration, Ex. E at 21:17–22:18 (analyst testimony that he was "not surprised" by Bancorp's use of the DSPP in 2008 and regarded DSPP capital raising as positive news).

The other cases relied on by the SEC also do not support its claim.  The Second Circuit's 40-year-old decision in *SEC v. Manor Nursing Centers, Inc.*, 458

F.2d 1082 (2d Cir. 1972), did not involve a duty to update internal projections during the course of a securities offering. It rather involved whether a company has a duty to correct *the terms of the offering itself* when its disclosure of those terms was false when made. *See id.* at 1095–96. Not surprisingly, the court held that there is such a duty. *Id.*

Similarly, *In re Time Warner Securities Litigation*, 9 F.3d 259 (2d Cir. 1993), involved a duty to disclose a fundamental change in the issuer's business — not a duty to update routine financial projections. *Id.* at 262, 267. Moreover, in its subsequent decision in *In re International Business Machines Corp. Securities Litigation*, 163 F.3d 102 (2d Cir. 1998), the Second Circuit held that there is no duty to update a statement that "does not contain some *factual representation* that remains 'alive' in the minds of investors as a *continuing representation*." *Id.* at 110 (emphasis added, citing *In re Burlington Coat Factory*, 114 F.3d 1410, 1432 (3d Cir. 1997)). The issue here, of course, is Bancorp's capital ratio projections at specific points in time — not any continuing factual representations on the company's part. As explained above, projections about future performance cannot remain "alive" in the minds of reasonable investors — especially where, as here, the issuer has expressly disclaimed any duty to update its forecasts. *Winick*, 73 F. App'x at 254.[3]

---

[3] The SEC tries to obscure the duty-to-update issue by contending that the law is somehow different where plaintiff has alleged a fraudulent "scheme." As explained in our Opening Brief, however, there can be no "scheme" liability where plaintiff's claim is based entirely on alleged false statements or omissions. *See WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011); Perry Opening Br. at 24. That is the case here concerning the SEC's contention that Bancorp had a duty to update statements that had purportedly become false and misleading based on subsequent events.

### E. Bancorp's Statement of Belief on February 29, 2008 That Its Capital and Liquidity Would Be Adequate Is Not Actionable.

Separate and apart from the alleged duty to update, the SEC contends that Bancorp's 10-K statement that "[w]e currently believe our liquidity level is sufficient to satisfy our operating requirements and meet our obligations and commitments" was false and misleading. The "bespeaks caution" doctrine defeats this claim. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414–15 (9th Cir. 1994); Perry Opening Br. at 14.

Contrary to the SEC's assertion, the bespeaks caution doctrine applies in SEC enforcement actions. *See, e.g., SEC v. Merchant Capital, LLC,* 483 F.3d 747, 767 n.18 (11th Cir. 2007) ("The bespeaks caution doctrine has a statutory equivalent in the safe harbor provided by the Private Securities Litigation Reform Act. *Because this case is not a private action, we apply the judicially created bespeaks caution doctrine instead*.") (emphasis added, internal citations omitted); *accord SEC v. U.S. Sustainable Energy Corp.,* No. 5:08-cv-245, 2011 U.S. Dist. LEXIS 79909, at *37 n.6 (S.D. Miss. July 21, 2011). The SEC cites no case holding otherwise.

While the SEC argues that the bespeaks caution doctrine should not apply in an enforcement action because reliance is not a necessary element of a fraud claim by the SEC, the doctrine primarily concerns *materiality*, not reliance. A statement of belief accompanied by sufficient cautionary language "renders the alleged omissions or misrepresentations *immaterial* as a matter of law." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993) (emphasis added); *accord Worlds of Wonder*, 35 F.3d at 1414 (citing Ninth Circuit cases holding that allegedly false or misleading statements were immaterial as a matter of law "in light of their . . . specific disclaimers" and "repeated emphasis of significant risk factors") (citations omitted); *Sitrick v. Citigroup Global Markets,*

*Inc.,* No. CV 05-3731 AHM (PJWx), 2009 U.S. Dist. LEXIS 37754, at *34 (C.D. Cal. Apr. 30, 2009).

The SEC is also incorrect in asserting that Bancorp's disclosures contained insufficient cautionary language. In fact, the 10-K and Form 8-K issued 17 days earlier contained extensive risk disclosures focused on the Bank's capital and liquidity adequacy. The 10-K itself contained 10 pages of detailed risk disclosures that were specifically tailored to the challenges faced by Bancorp and the Bank in confronting the global financial crisis. Levine Declaration, Ex. M at 303–12 (10-K). Both documents warned that, while the Bank was currently well capitalized, its well-capitalized status and liquidity could be in jeopardy if conditions continued to worsen. *See* Levine Declaration, Ex. A at 39, 89 (8-K); Ex. M at 304 (10-K). Bancorp even disclosed one adverse scenario in which the Bank's capital ratio could fall to 9.78 percent at year end — 22 basis points below the well-capitalized minimum. Levine Declaration, Ex. A at 117 (8-K).

Moreover, Bancorp's statement of belief was true when made (and turned out to be true in fact). As explained above, on the date Bancorp issued the 10-K, its "best forecast" was that the Bank's capital ratio would comfortably exceed the 10-percent minimum for a well-capitalized institution on March 31. *See* section I.C, *supra.* An earlier February 21 forecast also projected a quarter-end ratio of more than 10 percent. *Id.* Contrary to the SEC's baseless rhetoric, this is not a case where Bancorp "warn[ed] of a ditch" when it purportedly knew that the Bank's capital position was "already at the precipice." SEC Opp'n at 13. The undisputed facts establish that Defendants and Bancorp had no such "knowledge."

Finally, the SEC is wrong in suggesting that the bespeaks caution doctrine is not properly invoked on summary judgment. SEC Opp'n at 15. In fact, the very purpose of the doctrine is to "provide[] a mechanism by which a court can rule as a matter of law (*typically in a motion to dismiss . . . or a motion for summary judgment*) that defendants' forward-looking representations contained

enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004) (emphasis added, citation and internal quotation marks omitted). The Court should invoke that mechanism here and grant Mr. Perry's motion for partial summary judgment on the SEC's claim.

### F. Mr. Perry Did Not "Make" the Statements Contained in Bancorp's DSPP Prospectuses.

The SEC does not dispute that Mr. Perry neither signed nor reviewed Bancorp's DSPP prospectuses. It rather contends that he is liable for alleged false or misleading statements in those documents because they were incorporated by reference in a prior Registration Statement Mr. Perry signed. That claim cannot withstand scrutiny.[4]

As an initial matter, the SEC's position make no logical sense. The Registration Statement is dated June 30, 2006. The prospectuses were issued more than a year later, on October 11, 2007, April 3, 2008, and May 2, 2008. (SUF ¶ 19.) The statements that the SEC alleges were false thus had not even been made at the time Mr. Perry signed the Registration Statement. Accordingly, Mr. Perry's act of signing the Registration Statement cannot have been fraudulent.

Indeed, under the SEC's theory, Mr. Perry could be held liable for securities fraud based on the DSPP prospectuses, even if he had left Bancorp after signing the Registration Statement, but before the prospectuses were filed. Any such result would be flatly inconsistent with the Supreme Court's holding in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302, 180

---

[4] Mr. Perry strongly disputes the SEC's allegation that the prospectuses contained false or misleading statements. The Court, however, need not reach that issue because the undisputed facts establish that Mr. Perry had no role in preparing or approving those documents.

1    L.Ed.2d 166 (2011) (person can be liable as statement's maker only where he or

2    she has exercised "control" over its content); *see also SEC v. Todd*, No. 03 CV

3    2230 BEN (WMc), 2007 U.S. Dist. LEXIS 38985, at *5–*6 (S.D. Cal. May 30,

4    2007) (SEC's incorporation-by-reference rules do not "allow potential liability in

5    perpetuity for documents signed by an officer of a company, regardless of whether

6    that officer has any knowledge or control over their future use").

7         The SEC relies on *SEC v. Mozilo*, No. 09-3994-JFW (MANx), 2010 U.S.

8    Dist. LEXIS 98203 (C.D. Cal. Sept. 16, 2010), but that case is easily distinguished

9    and underscores why the SEC's position is wrong.  There, defendant Sambol was

10   held liable for misleading statements contained in a Form 10-K because he signed

11   an S-3 Registration Statement that incorporated the 10-K *after* the 10-K was filed.

12   *Id.* at *50.  The court explained that "because Sambol *repeated* the misleading

13   statements from the 2005 Form 10-K, he 'made' those statements, and can be held

14   liable for them."  *Id.* (emphasis added).  Here, by contrast, Mr. Perry signed the S-

15   3 Registration Statement *before* the prospectuses were issued.  He thus obviously

16   cannot be deemed to have "repeated" the alleged false statements contained in the

17   later-filed prospectuses — statements that would not be made for well over a year.

18        The SEC argues that, because no one signed the prospectuses, Mr. Perry's

19   position is "absurd."  SEC Opp'n at 8.  But Mr. Perry's argument is not based

20   solely on the fact that he did not *sign* the documents.  It is rather based on the

21   undisputed fact that he also neither prepared, nor reviewed, nor approved them.

22   (SUF ¶ 22.)  Had he done so, Mr. Perry could potentially be liable as their maker

23   under *Janus Capital*, regardless of whether he signed the filings.  But that is not

24   what happened.  Mr. Perry simply had no involvement with the prospectuses.

25   (*Id.*)  What would truly be "absurd" is for Mr. Perry to be held liable for securities

26   fraud when he indisputably played no role in generating the statements that the

27   SEC (erroneously) contends were fraudulent.

28

Finally, the SEC's assertion that Mr. Perry need not have "made" the statements in the prospectuses to be liable for them under section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) is unfounded.  In the Ninth Circuit, "to prove securities fraud under section 17(a) . . . *the SEC must first establish that the defendants made* a material misstatement or omission in connection with the offer or sale of a security."  *SEC v. Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 186 (9th Cir. 2008) (emphasis added); *see* Perry Opening Br. at 23.  Because the SEC cannot establish that Mr. Perry "made" the statements at issue, he is entitled to summary judgment on the SEC's prospectus claims.

### G.     Bancorp Had No Duty to Disclose the Suspension of Dividends on Preferred Securities Prior to Board Approval.

As explained in our Opening Brief, Mr. Perry is likewise entitled to summary judgment on the SEC's claim that he fraudulently delayed disclosure of the decision to suspend the payment of dividends on preferred securities issued by Bancorp and the Bank.  Perry Opening Br. at 24–25.  The SEC opposition offers no viable response.

Notably, the SEC does not dispute that the Boards of Bancorp and the Bank had authority over whether or not Bancorp or the Bank would continue to pay preferred dividends.  It does not dispute that the Boards approved the suspension of preferred dividends on May 8, 2008.  And it does not dispute that such suspension was disclosed two business days later, within the four business days permitted by SEC rules.  These undisputed facts are dispositive. *See* Perry Opening Br. at 24–25.

The SEC argues that the Boards "could have" approved the dividend suspensions earlier than they did.  SEC Opp'n at 23 n.17.  But it offers no authority for the erroneous proposition that a disclosure obligation is triggered when a Board "could have" acted as distinct from when it did in fact act.  Because

1   the SEC can offer no support for its position, its claim based on the dividend

2   suspensions should be dismissed.

3                                **CONCLUSION**

4         For the foregoing reasons and the reasons stated in our Opening Brief, Mr.

5   Perry's motion for partial summary judgment should be granted.  The Court

6   should dismiss:  (a) the SEC's disgorgement claim against Mr. Perry; (b) the

7   SEC's claims against Mr. Perry based on Bancorp's February 12, 2008 8-K; (c)

8   the SEC's claims against Mr. Perry based on Bancorp's February 29, 2008 10-K;

9   (d) the SEC's claims against Mr. Perry based on Bancorp's DSPP prospectuses;

10  (e) the SEC's claim that Mr. Perry had a continuing duty to update the foregoing

11  documents; and (f) the SEC's claim that Mr. Perry fraudulently delayed disclosure

12  of the decision to suspend the payment of dividends on preferred securities issued

13  by Bancorp and the Bank.

14  Dated:  May 7, 2012                        Respectfully submitted,

15                                             /s/ D. Jean Veta

16                                             D. Jean Veta
                                               Counsel to Michael W. Perry

17

18

19

20

21

22

23

24

25

26

27

28