```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                          WESTERN DIVISION



SECURITIES AND EXCHANGE          )
COMMISSION,                      )
                                 )
              Plaintiff,         )  No. CV 11-1309 R
                                 )
         vs.                     )
                                 )
MICHAEL W. PERRY and A. SCOTT    )
KEYS,                            )
                                 )
              Defendants.        )




                    TRANSCRIPT OF PROCEEDINGS

   THE HONORABLE MANUEL L. REAL, U.S. DISTRICT JUDGE PRESIDING

                     LOS ANGELES, CALIFORNIA

                          MAY 21, 2012


                         MOTIONS HEARING




              BRIDGET R. MONTERO, CSR 10020, RMR, CRR
                    United States Courthouse
              312 North Spring Street, Room 435
                  Los Angeles, California 90012
                      www.bridgetmontero.com
                    Internal File No. 12036
```

```
 1   APPEARANCES OF COUNSEL:

 2

 3   For the Plaintiff:

 4

 5   United States Securities and Exchange Commission
     BY:  DONALD W. SEARLES
 6   BY:  JOHN W. BERRY
     BY:  NICHOLAS S. CHUNG
 7   5670 Wilshire Boulevard, 11th Floor
     Los Angeles, CA 90036
 8

 9

10   For the Defendants:

11

12   Covington & Burling LLP
     BY:  D. JEAN VETA
13   BY:  DENNIS B. AUERBACH
     1201 Pennsylvania Avenue NW
14   Washington DC 20004

15

16   Willkie Farr & Gallagher, LLP
     BY:  GREGORY S. BRUCH
17   BY:  JULIE SMITH
     1875 K Street, NW
18   Washington DC 20006

19

20

21

22

23

24

25
```

1                    MONDAY, MAY 21, 2012; 10:48 A.M.
2                              - - - - -
3
4           THE CLERK:  Item No. 10, CV 11-1309, SEC v.
5    Michael W. Perry, et al.
6           Counsel, your appearances, please.
7           MR. SEARLES:  Good morning, Your Honor.  Donald
8    Searles on behalf of the commission.  My colleagues, John
9    Berry and Nick Chung, are with me, as well.  Thank you.
10          MS. VETA:  Good morning, Your Honor.  Jean Veta
11   here with my colleague, Dennis Auerbach, on behalf of
12   Defendant Michael Perry.  And Mr. Perry is in the courtroom,
13   as well, sir.
14          MR. BRUCH:  Good morning, Your Honor.  Greg Bruch
15   on behalf of Defendant Alan Scott Keys.  My colleague, Julie
16   Smith, is with me, as well.
17          THE COURT:  All right.  Counsel, anything to add
18   to the documents which have been filed?
19          MS. VETA:  No, Your Honor.
20          MR. SEARLES:  Your Honor, I'd like to briefly
21   address the reply that was filed by Defendants Perry and
22   Keys.
23          Just briefly, Defendants attempt to characterize
24   our case as one of a failure to disclose or update
25   forecasts.  That is not what this case is about.  Our case

```
 1   is about a 10-K filed in February of 2008.  It was
 2   demonstrably false at the time it was filed.
 3            By way of background to this case, the capital
 4   position of the bank was absolutely critical.  The bank's
 5   capital ratios were absolutely critical.  On February 12th,
 6   IndyMac issued a Form 8-K in which it addressed both of
 7   those issues, and reassured the market that it would not be
 8   raising capital in the capital markets because at that time,
 9   the stock price of IndyMac was far below its book value.
10            IndyMac's management, Mr. Perry and Mr. Keys,
11   appreciated the signals that would be sent to the markets if
12   IndyMac resumed sales under its direct stock purchase
13   program and told the market on that date, February 12th,
14   they would not do so.  Two weeks later, in Indymac's
15   Form 10-K, they have a provision, that we have alleged in
16   the complaint, that is demonstrably false.
17            In that provision they state that we may be
18   required to raise the -- of capital.  "May" is not the same
19   as "am."  They had a -- at present -- at that time, on
20   February 29th, they had already resumed the sales of stock
21   under the DSPP program, so the statement that they may do
22   so, were disclosing a risk that they may do so, is false.
23   That risk had already materialized.  They had already
24   started raising --
25            THE COURT:  This is all in your papers, Counsel.
```

```
 1                MR. SEARLES:  It is.
 2                What I think -- the point that the defendants are
 3     arguing -- or mischaracterizing our case, is the duty to
 4     update forecasts, the duty to update capital ratio
 5     forecasts.  That is not what this case is about.
 6                And, just briefly, in Mr. Keys's reply to our
 7     opposition, he contends that we have not responded to his
 8     argument regarding disgorgement.  We have.  Our position
 9     with Mr. Keys is exactly the same as it is with Mr. Perry.
10     We filed a joint opposition.  They joined in their papers.
11     We submit that our brief, it adequately addresses that
12     issue.  The same factual bases for disgorgement with respect
13     to salary and the stock proceeds under the DSPP are
14     appropriate as to both defendants.
15                I'll submit it with that, Your Honor.
16                THE COURT:  Counsel?
17                MS. VETA:  Your Honor, we agree there was nothing
18     new here, and we have nothing further to add.
19                Thank you, sir.
20                MR. BRUCH:  I concur in that, Your Honor.
21                THE COURT:  All right.  On February 26th, 2008,
22     Bancorp began to sell stock pursuant to the DSPP.  On
23     February 29th, 2008, Bancorp filed its 2007 Form 10-K, which
24     stated that Bancorp, quote, had -- has a direct stock
25     purchase plan, closed quote, and that Bancorp, quote, may be
```

1  required to raise capital at terms that are materially
2  adverse to shareholders, closed quote.
3         It is true that it is a material misstatement to
4  state that a firm may do something it is already doing. *SEC*
5  *v. Blavin*, 760 F.2d 706 (6th Cir. 1985). However, this is
6  inapplicable here because the Form 10-K does not state that
7  Bancorp may raise capital through the DSPP, but clearly
8  states that Bancorp already has a DSPP in effect. Indeed,
9  the Form 10-K states that the DSPP was one of Bancorp's,
10 quote, principal sources of cash in 2007, raising
11 $145.6 million. Therefore, the Form 10-K clearly discloses
12 that Bancorp was raising capital pursuant to DSPP.
13        The 2007 Form 10-K did not disclose an internal
14 capital ratio forecast made on February 19th, 2009, which
15 reflected that the bank's capital ratio might be at or below
16 10 percent at the end of the quarter, thus jeopardizing
17 well-capitalized status. Firms are not required to disclose
18 all internal projections, even if they provide additional
19 information. *In re Convergent Technologies Securities*
20 *Litigation*, 948 F.2d 507 (9th Cir. 1991).
21        Failure to disclose existing internal projections
22 is not an omission of a material fact. *In re Lyondell*
23 *Petrochemical Co. Securities Litigation*, 984 F.2d 1050 (9th
24 Cir. 1993). Therefore, Bancorp was not required to disclose
25 the February 19 capital ratio forecast.

```
 1              The 2007 Form 10-K stated that, quote, we were not
 2   forced to sell assets and liquidation prices and our funding
 3   capacity was not materially impacted, closed quote.
 4   However, the statement was clearly referring to conduct in
 5   2007.  The paragraph makes specific reference to, quote, the
 6   year ended on December 31, 2007, closed quote.  This
 7   statement was thus true, as stock sales pursuant to the DSPP
 8   did not begin until February 26th of 2008.
 9              The bespeaks caution doctrine applies to precise
10   cautionary language which directly addresses itself to
11   future projections, estimates, or forecasts.  *Miller v.*
12   *Pezzani*, 35 F.3d 1407 (9th Cir. 1994).
13              Predictive statement are just what the name
14   implies:  Predictions.  As such, any optimistic projections
15   contained in such statements are necessarily contingent.
16   *Rubinstein v. Collins*, 30 F.3d 160 (5th Cir. 1994).  The
17   2007 Form 10-K also stated, quote, we currently believe our
18   liquidity level sufficient to satisfy our operating
19   requirements and meet our obligations and commitments.
20              Cautionary language must precisely address the
21   substance of the specific statement or omission that is
22   challenged.  *In re Donald J. Trump Casino Securities*
23   *Litigation*, 7 F.3d (3rd Cir. 1993).  Here, Bancorp disclosed
24   that the market for mortgage-backed and asset-backed
25   securities had been significantly disrupted; that such
```

1  disruptions may negatively impact the bank and market
2  liquidity; that there were material risks to the bank's
3  well-capitalized status; and that interest rates changes,
4  real estate value drops, and other economic fluctuations
5  then occurring could impact capital requirements.
6  　　　　　The SEC alleges that the defendants are liable on
7  February 12th, 2008, Form 8-K because it was incorporated by
8  reference into the DSPP prospectuses and registration
9  statement.  However, the prospectuses and registration
10 statement specifically state that they do not incorporate
11 documents or information deemed to have been, quote,
12 furnished and not filed, closed quote, in accordance with
13 the SEC rules.
14 　　　　　Information provided pursuant to items 2.02 and
15 7.01 are, quote, furnished and not filed, closed quote,
16 until the filer states otherwise.  SEC Form 8-K
17 section(b)(2).  Here, the DSPP prospectuses and registration
18 statement explicitly state that they do not incorporate any
19 documents furnished and not filed.  Therefore, the
20 February 12th, 2008, Form 8-K was not incorporated by
21 reference into the DSPP prospectuses and registration
22 statement.
23 　　　　　The requirement that a party be the maker of the
24 alleged false statements or omissions applies to both Rule
25 10b-5 and Section 17(a).  *SEC v. Dain Rauscher, Inc.*, 254

```
 1   F.3d 852 (9th Cir. 2001).  Here, it is undisputed that
 2   defendants did not sign the DSPP prospectuses, nor did they
 3   have any role in preparing or reviewing them.  The maker of
 4   a statement is the person or entity that ultimate -- with
 5   ultimate authority over the statement, including its content
 6   and whether and how to communicate it.  Janus Capital Group,
 7   Inc. v. First Derivative Traders, 131 S.Ct. (2011).  Because
 8   Defendants in no way participated in the preparation and
 9   release of the prospectuses, they cannot be held liable for
10   their content.
11            The S-3 registration statement signed by
12   Defendants did not incorporate the DSPP prospectuses by
13   reference because the S-3 registration statement was signed
14   before the DSPP prospectuses were made.
15            Every registrant subject to section 240.13a-1
16   shall file a current report on Form 8-K within the period
17   specified in that form.  17 CFR section 240.13-11(a).
18   Unless otherwise specified, a report is to be filed or
19   furnished within four business days after occurrence of the
20   event.  SEC Form 8-K section (b)(1).
21            In this case, on Thursday, May 8th, 2008, the
22   boards of Bancorp and the bank voted to approve deferral of
23   dividends on preferred securities.  These deferrals were
24   publicly reported on Monday, May 12th, 2008.  It is
25   undisputed that the deferral was reported within two
```

```
 1   business days of the vote.  While Perry had already told the
 2   board on April 24th that they planned to defer the dividend,
 3   a mere expression of management's opinion is not actionable
 4   if they lack the authority to enforce that opinion.  See *In*
 5   *re IBM Corporate Securities Litigation*, 163 F.3d 102 (2nd
 6   Cir. 1998).
 7             The SEC's power to obtain injunctive relief has
 8   been broadly read to include disgorgement of profits
 9   realized from violations of the securities laws.  *SEC v.*
10   *Clark*, 915 F.2d 439 (9th Cir. 1999).  The amount of
11   disgorgement includes, quote, all gains, closed quote,
12   flowing from illegal activities.  *SEC v. Platforms Wireless*
13   *International Corp.*, 617 F.3d 1072 (9th Cir. 2010).  Here,
14   Perry did not sell any Bancorp stock between 2006 and 2008,
15   received no bonus between 2007 and 2008, and lost almost the
16   entire value of his Bancorp stock when the company filed for
17   bankruptcy.
18             Similarly, Keys also sold no Bancorp stock between
19   2007 and 2008, received no bonus in 2009, and also lost the
20   full value of his Bancorp stock when the company filed for
21   bankruptcy.  Salary and benefits may be disgorged in some
22   circumstances.  See *SEC v. Global Express Capital Real*
23   *Estate Investment Fund*, 289 Fed.Appx. 183 (9th Cir. 1998).
24             However, the burden is on the plaintiff to show
25   that the compensation was not earned from, quote, various
```

```
 1   functions of value to the company other than the fraudulent
 2   activities, closed quote.  SEC v. Resnick, 604 F.Supp.2d 773
 3   (D. Md. 2009).  The SEC has failed to demonstrate that
 4   Defendants' salaries and benefits would not have been given
 5   but for the illegal conduct.
 6           For these reasons, Defendants Perry and Keys's
 7   motion for partial summary judgment are hereby granted.
 8           Counsel to prepare the uncontroverted facts and
 9   the judgments for each of the defendants
10           MS. VETA:  Thank you, Your Honor.
11           MR. SEARLES:  Your Honor, one housekeeping matter.
12           THE COURT:  I beg your pardon?
13           MR. SEARLES:  We have just one housekeeping matter
14   to address.
15           THE COURT:  All right.
16           MR. SEARLES:  The trial is scheduled for June 26.
17   There are motions in limine the parties are planning on
18   filing.  With the current agreed-upon hearing date of
19   June 18th, we would like to have the matters heard sooner
20   than that.  I don't know if that's feasible, with the
21   Court's calendar.
22           THE COURT:  I don't have anything here in which I
23   can make a determination.
24           MR. SEARLES:  Okay.
25           THE COURT:  All right.
```

```
 1              MS. VETA:  Thank you, Your Honor.
 2              (Proceedings concluded at 11:03 a.m.)
 3
 4
 5                      C E R T I F I C A T E
 6
 7         I hereby certify that the foregoing is a true and
 8    correct transcript from the stenographic record of the
 9    proceedings in the foregoing matter.
10
11    /s/Bridget R. Montero
      Bridget R. Montero                Date:  May 22, 2012
12    Official Court Reporter
      CSR No. 10020
13
14
15
16
17
18
19
20
21
22
23
24
25
```