D. Jean Veta (admitted *pro hac vice*)
jveta@cov.com
Benjamin J. Razi (admitted *pro hac vice*)
brazi@cov.com
Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Nishchay H. Maskay (admitted *pro hac vice*)
nmaskay@cov.com
Jason A. Levine (admitted *pro hac vice*)
jlevine@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 662-6000
Fax: (202) 662-6291

Anthony M. Glassman (SBN 37934)
amg@gbsjlaw.com
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210
Tel.: (310) 278-5100
Fax: (310) 271-6041

Attorneys for Defendant
MICHAEL W. PERRY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL W. PERRY and A. SCOTT KEYS,<br><br>Defendants. | Case No. CV-11-1309 R JC(x)<br><br>**NOTICE OF MOTION AND MICHAEL W. PERRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S RISK-WEIGHTING AND SECTION 17(a)(2) CLAIMS**<br><br>Date: July 16, 2012<br>Time: 10:00am<br>Judge: Honorable Manuel L. Real<br>Courtroom: No. 8 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Michael W. Perry, by his undersigned counsel, on July 16, 2012, at 10:00 a.m. in Courtroom 8 of the United States District Court for the Central District of California, Western Division, 312 N. Spring St., Los Angeles, CA 90012, or at such other time and place as the Court may direct, will and hereby does move this Court for an order granting Mr. Perry's Motion for Partial Summary Judgment.

This Motion for Partial Summary Judgment is made under Federal Rule of Civil Procedure 56 and Local Rule 56-1, and seeks partial summary judgment in Mr. Perry's favor on the following claims asserted by plaintiff the Securities and Exchange Commission:

1. The SEC's claim relating to the risk weighting IndyMac Bancorp, Inc. ("Bancorp") used to calculate the capital ratios of IndyMac Bank, F.S.B. (the "Bank") as of March 31, 2008, and the disclosure thereof in Bancorp's May 12, 2008 SEC filings; and

2. The SEC's claim under section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

As more fully explained in Mr. Perry's accompanying memorandum of points and authorities, the SEC cannot meet its burden of establishing a genuine issue for trial on the foregoing claims.

Mr. Perry's motion is based on this Notice and Motion for Partial Summary Judgment, the Memorandum of Points and Authorities in support thereof, the Statement of Uncontroverted Facts and Proposed Conclusions of Law, the Declaration of Michael W. Perry, the Declaration of Jason A. Levine and the exhibits attached thereto, and such further evidence and argument as the Court may deem appropriate.

Pursuant to the Court's "Order re: Notice to Counsel" filed on June 23, 2011 (Dkt. No. 35 at ¶ 7), the parties are not required to meet and confer with respect to dispositive motions.

Dated:  June 13, 2012                              Respectfully submitted,

                                                   /s/ D. Jean Veta
                                                   D. Jean Veta
                                                   COVINGTON & BURLING LLP
                                                   Counsel to Michael W. Perry

D. Jean Veta (admitted *pro hac vice*)
jveta@cov.com
Benjamin J. Razi (admitted *pro hac vice*)
brazi@cov.com
Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Nishchay H. Maskay (admitted *pro hac vice*)
nmaskay@cov.com
Jason A. Levine (admitted *pro hac vice*)
jlevine@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: (202) 662-6000
Fax: (202) 662-6291

Anthony M. Glassman (SBN 37934)
amg@gbsjlaw.com
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210
Tel.: (310) 278-5100
Fax: (310) 271-6041

Attorneys for Defendant
MICHAEL W. PERRY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>     Plaintiff, <br><br> v. <br><br> MICHAEL W. PERRY AND A. SCOTT KEYS, <br><br>     Defendants. | Case No. CV 11-1309-R JC(x) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MICHAEL W. PERRY'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFF'S RISK-WEIGHTING AND SECTION 17(a)(2) CLAIMS** <br><br> Date: July 16, 2012 <br> Time: 10:00am <br> Judge: Honorable Manuel L. Real <br> Courtroom: No. 8 |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

I.    UNDISPUTED FACTUAL BACKGROUND ...........................................3

      A.    Bancorp and the Bank ....................................................................3

      B.    Calculation of the Bank's Capital Ratios .....................................4

      C.    The Bank's Operative Capital Ratios for Determining Well-
            Capitalized Status as of March 31, 2008 .....................................4

      D.    IndyMac's Reporting of the Bank's Capital Ratios in Its May
            12, 2008 SEC Filings ....................................................................5

      E.    Facts Negating the SEC's Allegation That Mr. Perry
            "Obtain[ed] Money or Property" by Means of Alleged False
            Statements or Omissions in IndyMac's May 12 Filings ..............7

II.   SUMMARY JUDGMENT STANDARD ....................................................8

III.  ARGUMENT ............................................................................................8

      A.    Mr. Perry Is Entitled to Summary Judgment on the SEC's
            "Risk-Weighting" Claim .................................................................8

            1.    IndyMac's May 12 SEC Filings Accurately Disclosed
                  the Bank's Operative Capital Ratio ......................................8

            2.    IndyMac's May 12 Filings Also Emphatically Disclosed
                  the Tenuousness of the Bank's Well Capitalized-Status ..........10

            3.    Mr. Dochow's Lack of Recollection Does Not Create a
                  Genuine Issue for Trial .......................................................11

      B.    Mr. Perry Is Entitled to Summary Judgment on the SEC's
            Claim Under Section 17(a)(2) of the Securities Act ..................13

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

Page

CASES

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ................................. 8, 12

*Cleveland v. Policy Mgmt. Sys. Corp.*,
  526 U.S. 795, 119 S. Ct. 1597, 143 L.Ed.2d 966 (1999) .................................... 8

*Fed. Election Comm'n v. Toledano*,
  317 F.3d 939 (9th Cir. 2002) .......................................................................... 11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .......................................................................... 10

*Harkavy v. Apparel Indus., Inc.*,
  571 F.2d 737 (2d Cir. 1978) ........................................................................... 10

*In re Foxhollow Techs., Inc.*,
  No. C 06-4595 PJH, 2008 U.S. Dist. LEXIS 52363 (N.D. Cal. May 27,
  2008), *aff'd*, 359 F. App'x 802 (9th Cir. 2009) .............................................. 10

*Sackett v. Beaman*,
  399 F.2d 884 (9th Cir. 1968) .......................................................................... 13

*SEC v. Burns*,
  No. 84-cv-0454, 1986 WL 36318 (S.D. Cal. Feb. 19, 1986) ........................... 13

*SEC v. Forman*,
  No. 07-cv-11151-RWZ, 2010 WL 2367372 (D. Mass. June 9, 2010) .............. 14

*SEC v. Hopper*,
  No. H 04-cv-1054, 2006 WL 778640 (S.D. Tex. Mar. 24, 2006) ..................... 14

*SEC v. Phan*,
  500 F.3d 895 (9th Cir. 2007) .......................................................................... 13

*SEC v. Wolfson*,
  539 F.3d 1249 (10th Cir. 2008) ....................................................................... 14

*Zucker v. Quasha*,
  891 F. Supp. 1010 (D.N.J. 1995) .................................................................... 10

## STATUTES

12 U.S.C. § 1831o ....................................................................................................4

15 U.S.C. § 77q(a)(2) (Securities Act § 17(a)(2)) ..........................................passim

## OTHER AUTHORITIES

12 C.F.R. § 562.2 (2008) ........................................................................................4

12 C.F.R. § 565.4 (2008) ........................................................................................4

Fed. R. Civ. P. 56 ....................................................................................................8

**INTRODUCTION**

Following the Court's May 21, 2012 decision granting Mr. Perry's motion for partial summary judgment, the only issues remaining in this case concern whether Mr. Perry made material false statements or omissions in two IndyMac SEC filings dated May 12, 2008.  In light of that ruling, Mr. Perry now files this additional motion for partial summary judgment so that the Court may *further* narrow the issues for trial.  Specifically, Mr. Perry seeks summary judgment on the SEC's claim that the May 12 filings omitted material information about the "risk weighting" employed to calculate the capital ratios of IndyMac Bank (the "Bank") for the first quarter of 2008.  Mr. Perry also seeks summary judgment on the SEC's claim that Mr. Perry can be liable for alleged false statements or omissions in the May 12 filings under section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2), which provides for liability based on negligence and does not require proof of scienter.

If these issues are eliminated, the only matter remaining for trial will concern whether Mr. Perry purposefully made false statements or omissions in IndyMac's May 12 filings concerning an $18 million capital contribution from IndyMac Bancorp ("Bancorp" or "IndyMac") to the Bank.  There are a few factual disputes regarding the SEC's baseless fraud claim concerning the capital contribution which will need to be resolved through witness testimony, but a trial on this narrow matter should require no more than 1–2 court days.  Accordingly, disposing of the risk-weighting and section 17(a)(2) issues at the summary judgment stage would substantially promote judicial efficiency and economy.

Mr. Perry is entitled to judgment as a matter of law on the SEC's risk-weighting claim because the SEC cannot meet its threshold burden of showing that IndyMac's May 12 filings contained any false statements or misleading omissions as to risk weighting.  The SEC contends that the May 12 filings should have disclosed what IndyMac Bank's capital ratio would have been as of March

MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON RISK-
WEIGHTING AND SECTION 17(a)(2) CLAIMS
Case No. CV 11-1309-R JC(x)

31, 2008 had it been required to "double risk weight" subprime assets.  But it is undisputed in the record that the Bank's capital ratio *without* double risk weighting subprime assets is the only number that mattered in determining whether the Bank was well capitalized as of March 31, 2008.  IndyMac duly disclosed that operative ratio in its May 12 filings.

There was nothing false or misleading about IndyMac's disclosure.  While the SEC claims that investors might have thought the ratio reported in IndyMac's May 12 Form 10-Q included double risk weighting for subprime assets, in fact the 10-Q contained a table comparing the Bank's capital ratio as of March 31, 2008 with the *non*-double risk-weighted ratios for prior quarters.  This was a straightforward "apples to apples" comparison.  A reasonable investor could not have been misled by IndyMac's disclosure.

The SEC contends that IndyMac should nonetheless have disclosed that its capital ratio would have been four basis points below the 10-percent well-capitalized minimum (*i.e.*, 9.96 percent) had the OTS made a different decision and required the Bank to double risk weight its subprime assets, so as to alert investors about the Bank's tenuous hold on well-capitalized status.  But IndyMac had no duty to disclose what the Bank's ratio would have been under a hypothetical scenario that simply did not matter for purposes of determining whether the Bank was well capitalized at March 31, 2008.  In any event, it is undisputed that IndyMac's Form 10-Q dated May 12, 2008 disclosed that the Bank's capital ratio at March 31 would have been 9.27 percent had an April 24 downgrade of bonds held by the Bank occurred just 24 days earlier.  This disclosure of a scenario in which the Bank's capital ratio would have been a mere 9.27 percent — 73 basis points below the well-capitalized minimum — did far more to alert investors to the tenuousness of the Bank's well-capitalized status than any disclosure of a hypothetical 9.96 percent ratio (*i.e.*, four basis points below the minimum) could have done.

Mr. Perry is also entitled to summary judgment on the SEC's claim based on section 17(a)(2) of the Securities Act — as to both the risk-weighting *and* the $18 million capital contribution issues.  To prevail under section 17(a)(2), the SEC must show that Mr. Perry directly or indirectly "obtain[ed] money or property" by means of a false or misleading statement or omission.  15 U.S.C. § 77q(a)(2).  Before the case was narrowed by the Court on May 21, the SEC perhaps could have argued that Mr. Perry indirectly "obtain[ed] money or property" by means of allegedly false or misleading statements because IndyMac was raising capital through its Direct Stock Purchase Plan ("DSPP") between late February and early May 2008.  That argument is no longer available to the SEC.  It is undisputed that IndyMac's DSPP sales had ceased by May 9, 2008 — *i.e.*, *before* the May 12 filings that remain at issue in the case.  Accordingly, neither IndyMac nor Mr. Perry can have "obtain[ed] money or property" by means of the allegedly false and misleading May 12 filings.  There is thus no remaining basis for the SEC's section 17(a)(2) claim.

## I.      UNDISPUTED FACTUAL BACKGROUND

### A.      Bancorp and the Bank

The Bank was a federally-chartered thrift regulated by the OTS, which failed in July 2008 amid the worst financial crisis since the Great Depression. (*See* Uncontroverted Facts and Conclusions of Law Regarding Motions for Summary Judgment ("Findings of Fact") ¶ 1 (Dkt. No. 88).)  It was a wholly-owned subsidiary of Bancorp, a publicly-owned thrift holding company. Bancorp's only significant asset was the Bank.  (*Id.* ¶ 2.)  Accordingly, when the Bank failed in July 2008, Bancorp was forced to file for bankruptcy shortly thereafter.  (*See* Statement of Uncontroverted Facts and Conclusions of Law in Support of Mr. Perry's Mot. for Partial Summary Judgment Concerning Pl.'s Risk-Weighting and Section 17(a)(2) Claims ("SUF") ¶ 2.)

**B.      Calculation of the Bank's Capital Ratios**

A "risk-based capital ratio" is a measure used by the OTS to assess the capital adequacy of thrifts under its jurisdiction.  There are five categories used by the OTS to measure capital adequacy.  *See* 12 U.S.C. § 1831o (2008); 12 C.F.R. § 565.4 (2008).  "Well capitalized" is the highest such measure, followed by "adequately capitalized."  An institution's total risk-based capital ratio must equal or exceed 10 percent for it to qualify as "well-capitalized."  12 C.F.R. § 565.4(b)(1)(i).  The Bank reported its capital ratios to the OTS on a quarterly basis pursuant to OTS regulations.  *See* 12 C.F.R. § 562.2 (2008).  The numbers were reflected on quarterly Thrift Financial Reports ("TFRs") filed with the OTS.

The Bank was required to calculate its capital ratios in accordance with the standard TFR instructions for calculating such ratios.  (SUF ¶ 3.)  Historically, the Bank also separately calculated and provided to the OTS its capital ratios by "double risk weighting" its subprime assets, *i.e.*, assigning an additional risk value to subprime loans.  (SUF ¶ 4.)  The calculation with such double risk weighting resulted in slightly lower ratios.  (*See, e.g.*, SUF ¶¶ 8, 10.)

**C.      The Bank's Operative Capital Ratios for Determining Well-Capitalized Status as of March 31, 2008**

On the morning of February 26, 2008, Mr. Perry and IndyMac CFO Scott Keys had a telephone conversation with Darrel Dochow, the OTS Director for the Western Region.  Mr. Keys has testified that, in response to IndyMac's request, Mr. Dochow waived any requirement that IndyMac double risk weight subprime assets in calculating the Bank's capital ratios for purposes of determining whether the Bank was well capitalized.  (SUF ¶ 4.)  Immediately after the call, Mr. Perry reported the OTS waiver to the IndyMac Board of Directors' Enterprise Risk Management ("ERM") Committee when he joined its meeting then in progress on the morning of February 26.  (*See* SUF ¶ 6 (citing ERM Committee minutes).)  Mr. Perry told the ERM Committee that, although the OTS had rejected a request

for  relief on a separate issue, "the OTS is agreeing to the subprime risk waiver." (*Id.*)

Based on the OTS waiver, the operative capital ratios in determining whether the Bank was well capitalized as of March 31, 2008 were the ratios calculated without double risk weighting of subprime assets.  (SUF ¶ 7.)  While IndyMac also provided the OTS with the Bank's capital ratios as of March 31 calculated *with* double risk weighting of subprime assets in an addendum to the TFR (known as a "CCR Addendum"), this calculation was provided as supplemental information at the OTS's request.  It was not relevant to whether the Bank was well capitalized.  (SUF ¶¶ 5, 9.)

The Bank's total risk-based capital ratio without double risk weighting of subprime assets was 10.26 percent as of March 31, 2008.  (SUF ¶ 8.)  The Bank's CCR Addendum, provided as supplemental information to the OTS on May 12, 2008, reflected that the Bank's capital ratio would have been 9.96 percent had double risk weighting of subprime assets been required.  (SUF ¶¶ 9–10.)  That the 10.26 percent non-double risk-weighted ratio — not the 9.96 percent ratio — was the operative one for the OTS in determining whether the Bank was well capitalized as of March 31, 2008 is confirmed by the fact that the OTS considered the Bank well capitalized well into June 2008, and did not reclassify the Bank to an adequately capitalized institution until July 1, 2008.  (SUF ¶ 11.)

## D. IndyMac's Reporting of the Bank's Capital Ratios in Its May 12, 2008 SEC Filings

IndyMac SEC filings before the first quarter of 2008 reported the Bank's capital ratios both with and without double risk weighting of subprime assets. (SUF ¶ 13.)  Based on the February 26 phone call with Mr. Dochow, however, IndyMac reported only the capital ratio *without* double risk weighting of subprime assets in its Form 10-Q for the first quarter of 2008.  (SUF ¶ 14.)  IndyMac did not report the capital ratio *with* double risk weighting of subprime assets in the May

12, 2008 10-Q because that was not the operative ratio for determining whether the Bank was well capitalized.  (SUF ¶¶ 9–11.)

The 10-Q contained a table comparing the 10.26 percent capital ratio without double risk weighting of subprime assets at March 31, 2008 with the non-double risk-weighted ratios for prior quarters.  This allowed investors to see how the Bank's capital ratios had declined from quarter to quarter during the global financial crisis on an "apples to apples" basis.  The historical capital ratios without double risk weighting, as reported in the May 12 Form 10-Q, were as follows:

1st Quarter 2007:   11.37 percent

2nd Quarter 2007:   12.24 percent

3rd Quarter 2007:   12.01 percent

4th Quarter 2007:   10.81 percent

1st Quarter 2008:   10.26 percent

(SUF ¶ 15.)

In addition to reporting the Bank's steadily declining capital ratios during the course of the financial crisis, IndyMac's May 12, 2008 10-Q also disclosed, *inter alia*, that IndyMac suffered a $184 million loss during the first quarter of 2008 and experienced an additional $245 million in *unrealized* losses for the quarter.  (SUF ¶ 16.a.)  Moreover, after describing the serious challenges that the financial crisis posed to IndyMac, the 10-Q made the following specific and detailed disclosure concerning the risk that the Bank might be reclassified from well capitalized to adequately capitalized and the possible adverse consequences of any such development:

There are scenarios where we could be adequately capitalized during this crisis; regulatory response to being adequately capitalized is not known. . . . If our regulatory capital position were to deteriorate such that we were classified as an "adequately capitalized" institution, we

might not be able to use brokered deposits as a source of funds. . . . Other possible consequences of classification as an "adequately capitalized" institution include the potential for increases in our borrowing costs and terms from the FHLB and other financial institutions, as well as in our premiums to the Deposit Insurance Fund administered by the FDIC to insure bank and savings association deposits and in our assessment payments to OTS.  Such changes could have an adverse effect on our operations.  (SUF ¶ 16.c, e.)

The 10-Q further explained that, if an April 24, 2008 downgrade of bonds held by the Bank had occurred just 24 days earlier, then the Bank's capital ratio at March 31 would have been 9.27 percent — 73 basis points below the well-capitalized minimum.  (SUF ¶ 17.)[1]

**E.**   **Facts Negating the SEC's Allegation That Mr. Perry "Obtain[ed] Money or Property" by Means of Alleged False Statements or Omissions in IndyMac's May 12 Filings**

Neither Mr. Perry nor IndyMac obtained money or property by means of any alleged false statement or omission in IndyMac's May 12 filings.  Bancorp had a longstanding practice of raising capital through the DSPP and contributing such capital to the Bank.  (Findings of Fact ¶¶ 21–22.)  While Bancorp raised capital through the DSPP from February 26, 2008 through May 9, 2008, it raised no further DSPP capital between May 9 and the date it filed for bankruptcy in July.  (SUF ¶ 18.)  Mr. Perry engaged in no stock sales in 2008, he received no bonus for 2008, and there is no evidence that his salary or benefits were tied in any way to the alleged false statements and omissions that the SEC says were contained in the May 12 filings.  (SUF ¶¶ 19–20.)

---

[1]  The 10-Q also disclosed a hypothetical scenario in which the Bank's capital ratio would have exceeded 10.26 percent.  (SUF ¶ 17.)

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where the evidence shows that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  If the moving party demonstrates the absence of a factual dispute, the nonmoving party can defeat summary judgment only by designating "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (citation and internal quotation marks omitted).  "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S. Ct. 1597, 1603, 143 L.Ed.2d  966 (1999) (citation and quotation marks omitted).  As shown below, Mr. Perry is entitled to partial summary judgment under this standard.

## III.   <u>ARGUMENT</u>

### A.   <u>Mr. Perry Is Entitled to Summary Judgment on the SEC's "Risk-Weighting" Claim.</u>

#### 1.   **IndyMac's May 12 SEC Filings Accurately Disclosed the Bank's Operative Capital Ratio.**

Mr. Perry is first entitled to summary judgment on the SEC's claim that IndyMac's filings were false or misleading by virtue of allegedly omitting material information on the risk-weighting issue.

As explained above, the operative capital ratio for determining whether the Bank was well capitalized at March 31, 2008 was the standard ratio calculated without double risk weighting subprime assets.  Mr. Keys testified that, on February 26, Mr. Dochow, the OTS Western Region Director, waived any

requirement that IndyMac double risk weight subprime assets for purposes of determining whether the Bank was well capitalized.  (SUF ¶ 4.)  Immediately after the call, Mr. Perry reported the OTS waiver to the ERM Committee of IndyMac's Board, stating that "the OTS is agreeing to the subprime risk waiver."  (SUF ¶ 6.)

Based on the OTS waiver, the operative total risk-based capital ratio for determining whether the Bank was well capitalized at March 31, 2008 was the ratio calculated without double risk weighting subprime assets.  IndyMac duly reported that operative ratio in its May 12, 2008 filings:  10.26 percent.  (SUF ¶¶ 8, 14.)  There was nothing false or misleading about IndyMac's disclosure, and there is thus no basis for the SEC's claim that Mr. Perry engaged in securities fraud.

The accuracy of IndyMac's disclosure is further demonstrated by the fact that, as explained above, the May 12 Form 10-Q contained a table comparing the Bank's capital ratio at March 31, 2008 without double risk weighting of subprime assets with the non-double risk-weighted ratio for prior quarters — *i.e.*, an "apples to apples" comparison.  (SUF ¶ 15.) The SEC cannot viably claim that this disclosure was false or misleading.

The SEC contends that IndyMac's first quarter 2008 filings were fraudulent because IndyMac had disclosed the Bank's capital ratio both with and without double risk weighting of subprime assets in past SEC filings.  But IndyMac had no duty to disclose the Bank's capital ratio with double risk weighting of subprime assets in its first quarter 2008 10-Q because that was *not* the operative ratio for determining whether the Bank was well capitalized as of March 31, 2008.  (*See* SUF ¶ 7.)  After February 2008, the OTS did not require IndyMac to double risk weight subprime assets for purposes of determining well-capitalized status.  While the OTS wanted IndyMac to continue reporting the double risk-weighted ratio to OTS as supplemental information, the double risk-weighted ratio had no other

relevance.  (SUF ¶¶ 5, 9.)  Accordingly, there is no basis for the SEC's contention that it needed to be disclosed to investors.

### 2. IndyMac's May 12 Filings Also Emphatically Disclosed the Tenuousness of the Bank's Well-Capitalized Status.

Nor is there a basis for the SEC's assertion that IndyMac needed to report what the Bank's March 31 capital ratio with double risk weighting of subprime assets would have been in order to alert investors to the tenuousness of the Bank's well capitalized position.

First, the double risk weighted capital ratio was *irrelevant* to the Bank's well-capitalized status, so any disclosure of that number would have been purely hypothetical.  There is no duty to disclose hypothetical information in SEC filings. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992) (no disclosure required when event is contingent or speculative); *In re Foxhollow Techs., Inc.*, No. C 06-4595 PJH, 2008 U.S. Dist. LEXIS 52363, at *63 (N.D. Cal. May 27, 2008) ("defendants did not have a duty to disclose the hypothetical possibility that some of the senior executives might at some point be leaving the [c]ompany, before such an event had occurred"), *aff'd*, 359 F. App'x 802 (9th Cir. 2009); *Zucker v. Quasha*, 891 F. Supp. 1010, 1018 (D.N.J. 1995) ("Federal securities law does not require disclosure of facts that are purely hypothetical . . . .").[2]

Second, as explained above, IndyMac's May 12, 2008 Form 10-Q *did* expressly disclose the tenuousness of the Bank's well capitalized position.  It disclosed that the Bank was at risk of ceasing to be well capitalized, as well as the possible adverse consequences of any such development.  Specifically, the 10-Q stated that "[t]here are scenarios where we could be adequately capitalized during

---

[2] *See also Harkavy v. Apparel Indus., Inc.*, 571 F.2d 737, 741 (2d Cir. 1978) ("[T]he law mandates disclosure only of *existing* material facts.") (emphasis added, internal quotation marks and citation omitted).

this crisis; regulatory response to being adequately capitalized is not known."  The 10-Q further described the possible consequences of losing well-capitalized status, including the risk that the Bank might not be able to use so-called "brokered deposits."  It also emphasized that "[s]uch changes could have an adverse effect on our operations."  (SUF ¶ 16.e.)

Indeed, IndyMac went even further:  as noted, the 10-Q explained that, if an April 24, 2008 downgrade of bonds held by the Bank had occurred just 24 days earlier, then the Bank's capital ratio at March 31 would have been 9.27 percent — 73 basis points below the 10-percent well-capitalized minimum.  (SUF ¶ 17.)  This warned investors of the risk that the Bank might cease to be well capitalized far more emphatically than could any putative disclosure that the Bank's capital ratio would have been 9.96 percent (*i.e.*, just <u>four</u> basis points below the well capitalized minimum) if, hypothetically, it was required to double risk weight subprime assets in calculating its operative capital ratio.

### 3.   Mr. Dochow's Lack of Recollection Does Not Create a Genuine Issue for Trial.

The SEC asserts that the subprime waiver was not in fact granted in February 2008, but it has no evidence to support that baseless claim.  At most, the SEC can argue that Mr. Dochow has no clear recollection of the risk-weighting issue.  (*See* SUF ¶ 12.)[3]  A witness's lack of recollection, however, does not create a genuine issue of material fact sufficient to defeat summary judgment.  *See, e.g.*, *Fed. Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) ("[T]he party against whom a summary judgment motion is brought must present evidence

---

[3]   Mr. Dochow signed a declaration on June 7, 2012 corroborating Mr. Keys' testimony concerning the February 26, 2008 call.  After meeting with the SEC on June 11, however, Mr. Dochow stated that his recollection on the subprime risk-weighting issue was "clouded."  (SUF ¶ 12.)  Accordingly, the instant motion does not rely on Mr. Dochow's declaration.

that, if presented at trial, would support a judgment in its favor.  Toledano's repeated failures of recollection . . . fall far short of satisfying this standard.").

The critical point is that Mr. Keys *does* recall what transpired during the February 26 call with Mr. Dochow, and has testified that Mr. Dochow granted the waiver during that call.  (SUF ¶ 4.)  This testimony is uncontradicted — and is, indeed, corroborated by the fact that Mr. Perry reported the OTS waiver to the ERM Committee of IndyMac's Board immediately after the call.  (SUF ¶ 6.) (citing February 26, 2008 ERM Committee minutes, wherein Mr. Perry reported that "the OTS is agreeing to the subprime risk waiver.").   Accordingly, Mr. Perry is entitled to summary judgment on the issue.  *See Celotex*, 477 U.S. at 324.

In any event, it is clear from the uncontradicted documentary evidence involving the OTS itself that the Bank's operative capital ratio as of March 31, 2008 was indeed the 10.26 percent ratio without double risk-weighting of subprime assets.  As noted above, IndyMac provided the OTS with a CCR Addendum on May 12, 2008 as supplemental information for the Bank's principal regulator to use in monitoring the Bank's capital position.  The CCR Addendum reflected that the Bank's capital ratio would have been 9.96 percent at March 31 had double risk weighting of subprime assets been required — *i.e.*, below the 10 percent well-capitalized minimum.  The OTS, however, never took the position that the Bank was not well capitalized as of March 31, 2008.  Indeed, the OTS did not reclassify the Bank from a well-capitalized to an adequately-capitalized institution until July 1.  (SUF ¶ 11.)  This demonstrates beyond dispute that the OTS considered the 10.26 percent ratio to be the operative one for purposes of determining whether the Bank was well capitalized at March 31.

In sum, the SEC cannot establish that IndyMac's May 12 filings contained any false statement or omission on the risk-weighting issue.  Mr. Perry is thus entitled to judgment as a matter of law on the SEC's claim.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON RISK-WEIGHTING AND SECTION 17(a)(2) CLAIMS
Case No. CV 11-1309-R JC(x)

**B.**   **Mr. Perry Is Entitled to Summary Judgment on the SEC's Claim Under Section 17(a)(2) of the Securities Act.**

Mr. Perry is also separately entitled to summary judgment on the SEC's claim under section 17(a)(2) of the Securities Act with respect to both the risk-weighting *and* the $18 million capital contribution issues.

Section 17(a)(2) is the subsection of section 17(a) that imposes liability for alleged false statements or omissions.[4]   The subsection makes it unlawful for a defendant "to obtain money or property by means of" any material "untrue statement" or "omission" in the "offer or sale" of securities.  *Id.*  A showing of scienter is not required under section 17(a)(2) — negligence is sufficient.  *See SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007).

The SEC cannot prove an essential element of its section 17(a)(2) claim. There can be no violation of section 17(a)(2) unless "a party 'obtains money or property' by means of [a] prohibited statement or omission."  *Sackett v. Beaman*, 399 F.2d 884, 891 (9th Cir. 1968); *accord SEC v. Burns*, No. 84-cv-0454, 1986 WL 36318, at *3 (S.D. Cal. Feb. 19, 1986) ("[T]he literal language of the statute requires a finding that the Defendant . . . 'obtain money or property' . . . .").

Mr. Perry obtained *no* money or property by means of any alleged misstatements or omissions in the May 12 filings here.  The SEC's section 17(a)(2) claim hinges entirely on IndyMac's use of the DSPP.  It is undisputed, however, that IndyMac's DSPP sales ceased by May 9, 2008, and that IndyMac did not raise capital from any other source after May 9.  (SUF ¶ 18.)  IndyMac thus did not "obtain money or property" by means of the purportedly false and misleading May 12 filings.

---

[4]  As the SEC acknowledges, "[t]his case is about false statements and omissions." *See* Pl.'s Mem. in Support of Motion *In Limine* Regarding Hearsay (Dkt. No. 85), at 1:12.

The SEC has alleged no separate basis for Mr. Perry himself having obtained money or property by means of the May 12 filings. The SEC cannot viably argue that Mr. Perry's receipt of salary or benefits after May 12 satisfies the statutory mandate.  Section 17(a)(2) requires that money or property be obtained "by means of" an untrue statement or omission.  Courts thus have required the SEC to establish that a defendant's compensation increased as a result of being "tied to company performance" or was otherwise directly linked to the alleged fraudulent statement.  *SEC v. Forman*, No. 07-cv-11151-RWZ, 2010 WL 2367372, at *8 (D. Mass. June 9, 2010); *see also SEC v. Wolfson*, 539 F.3d 1249, 1264 (10th Cir. 2008) (defendants compensated specifically for preparing fraudulent SEC filings and through percentage of proceeds from resulting stock sales); *SEC v. Hopper*, No. H 04-cv-1054, 2006 WL 778640, at *12 (S.D. Tex. Mar. 24, 2006) ("dramatic increase" in defendant's bonus during period of alleged fraud).

That did not happen here.  As the Court recognized in its ruling on Mr. Perry's prior motion for partial summary judgment, the SEC has put forth no evidence that Mr. Perry received any part of his salary or benefits due to any allegedly "illegal activities."  (*See* Uncontroverted Facts and Conclusions of Law Regarding Motions for Summary Judgment ("Conclusions of Law") ¶ 1 (Dkt. No. 88).)  Rather, the Court determined based on the undisputed facts that Mr. Perry "did not sell any Bancorp stock between 2006 and 2008, received no bonus between 2007 and 2008, and lost almost the entire value of his Bancorp stock when the company filed for bankruptcy."  Hr'g Tr. 10–11 (Dkt. No. 95).

Because the SEC cannot show that Mr. Perry "obtain[ed] money or property" by means of the alleged false statements or omissions in IndyMac's May 12 filings, the SEC's section 17(a)(2) claim fails as a matter of law as to both the risk-weighting and the capital contribution issues.

# <u>CONCLUSION</u>

For the foregoing reasons, Mr. Perry's motion for partial summary judgment should be granted.  The Court should dismiss (a) the SEC's subprime risk-weighting claim in its entirety; and (b) the SEC's claim under section 17(a)(2) of the Securities Act as to both the risk-weighting and the capital contribution issues.

Dated:  June 13, 2012                              Respectfully submitted,


/s/ D. Jean Veta
D. Jean Veta
COVINGTON & BURLING LLP
Counsel to Michael W. Perry